E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SARAH SPIELBERGER (Cal. Bar No. 311175)
ALEXANDRA MICHAEL (Cal. Bar No. Pending)
Assistant United States Attorneys
General Crimes Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3358
    Facsimile: (213) 894-0141
    E-mail:    sarah.spielberger@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>CARLOS CORONA, et al.,<br><br>        Defendants. | No. 2:23-cr-00429-JFW-10<br><br>PLEA AGREEMENT FOR DEFENDANT<br>VANESSA CORTES ARZATE |

1.    This constitutes the plea agreement between VANESSA CORTES ARZATE ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.    Defendant agrees to/that:

    a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count thirty-five

of the indictment in <u>United States v. CARLOS CORONA, et al.</u>, No.
2:23-cr-00429-JFW-10, which charges defendant with Laundering of
Monetary Instruments, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i),
2(a), 2(b).

   b. Not contest facts agreed to in this agreement.

   c. Abide by all agreements regarding sentencing contained
in this agreement.

   d. Appear for all court appearances, surrender as ordered
for service of sentence, obey all conditions of any bond, and obey
any other ongoing court order in this matter.

   e. Not commit any crime; however, offenses that would be
excluded for sentencing purposes under United States Sentencing
Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
within the scope of this agreement.

   f. Be truthful at all times with the United States
Probation and Pretrial Services Office and the Court.

   g. Pay the applicable special assessment at or before the
time of sentencing unless defendant has demonstrated a lack of
ability to pay such assessments.

   h. Any and all criminal debt ordered by the Court will be
due in full and immediately.  The government is not precluded from
pursuing, in excess of any payment schedule set by the Court, any and
all available remedies by which to satisfy defendant's payment of the
full financial obligation, including referral to the Treasury Offset
Program.

   i. Complete the Financial Disclosure Statement on a form
provided by the USAO and, within 30 days of defendant's entry of a
guilty plea, deliver the signed and dated statement, along with all

1  of the documents requested therein, to the USAO by either email at

2  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

3  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

4  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

5  criminal debt shall be assessed based on the completed Financial

6  Disclosure Statement and all required supporting documents, as well

7  as other relevant information relating to ability to pay.

8        j.   Authorize the USAO to obtain a credit report upon

9  returning a signed copy of this plea agreement.

10        k.   Consent to the USAO inspecting and copying all of

11  defendant's financial documents and financial information held by the

12  United States Probation and Pretrial Services Office.

13  THE USAO'S OBLIGATIONS

14      3.   The USAO agrees to:

15        a.   Not contest facts agreed to in this agreement.

16        b.   Abide by all agreements regarding sentencing contained

17  in this agreement.

18        c.   At the time of sentencing, move to dismiss the

19  remaining counts of the indictment as against defendant.  Defendant

20  agrees, however, that at the time of sentencing the Court may

21  consider any dismissed charges in determining the applicable

22  Sentencing Guidelines range, the propriety and extent of any

23  departure from that range, and the sentence to be imposed.

24        d.   At the time of sentencing, provided that defendant

25  demonstrates an acceptance of responsibility for the offense up to

26  and including the time of sentencing, recommend a two-level reduction

27  in the applicable Sentencing Guidelines offense level, pursuant to

28

1  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

2  additional one-level reduction if available under that section.

3  <u>NATURE OF THE OFFENSE</u>

4      4.   Defendant understands that for defendant to be guilty of

5  the crime charged in count thirty-five, that is, Laundering of

6  Monetary Instruments, in violation of Title 18, United States Code,

7  Section 1956(a)(1)(B)(i), the following must be true:

8          a.   First, defendant conducted a financial transaction

9  involving property that represented the proceeds of Bank Fraud, in

10  violation of Title 18, United States Code, Section 1344(1);

11          b.   Second, defendant knew that the property represented

12  the proceeds of some form of unlawful activity; and

13          c.   Third, defendant knew that the transaction was

14  designed in whole or in part to conceal or disguise the nature,

15  location, source, ownership or control of the proceeds.

16     A "financial transaction" is a transaction involving: (1) the

17  movement of funds by wire or other means that affects interstate or

18  foreign commerce in any way; (2) one or more monetary instruments

19  that affects interstate or foreign commerce in any way; or (3) the

20  use of a financial institution that is engaged in or the activities

21  of which affect interstate or foreign commerce in any way.

22      5.   Defendant understands that for defendant to be guilty of

23  aiding and abetting the Laundering of Monetary Instruments, as

24  charged in count thirty-five, in violation of 18 U.S.C. §§

25  1956(a)(1)(b)(i) and 2(a), the following must be true:

26          a.   First, someone else committed the Laundering of

27  Monetary Instruments;

28

1          b.    Second, defendant aided, counseled, commanded,

2   induced, or procured that person with respect to at least one element

3   of the Laundering of Monetary Instruments;

4          c.    Third, defendant acted with the intent to facilitate

5   the Laundering of Monetary Instruments; and

6          d.    Fourth, defendant acted before the crime was

7   completed.

8      6.    Defendant further understands that defendant may be found

9   guilty of aiding and abetting the Laundering of Monetary Instruments,

10  as charged in count thirty-five, in violation of 18 U.S.C. §§

11  1956(a)(1)(b)(i) and 2(b), even if defendant did not personally

12  commit the acts constituting the crime if defendant willfully caused

13  an act to be done that if directly performed by her would constitute

14  the crime of Laundering of Monetary Instruments.  If defendant puts

15  in motion or causes the commission of an indispensable element of the

16  crime of Laundering of Monetary Instruments, she may be found guilty

17  as if she had committed this element herself.

18     7.    Defendant understands that for an individual to be guilty

19  of Bank Fraud, in violation of Title 18, United States Code, Section

20  1344(1), the following must be true:

21         a.    First, the individual knowingly executed or attempted

22  to execute a scheme to defraud a financial institution of something

23  of value;

24         b.    Second, that the statements made as part of the scheme

25  were material; that is, they had a natural tendency to influence, or

26  were capable of influencing, a person to part with money or property;

27         c.    Third, the individual did so with the intent to

28  defraud the financial institution; and

5

1        d.    Fourth, the financial institution was insured by the

2   Federal Deposit Insurance Corporation.

3        A "scheme to defraud" means any deliberate plan of action or

4   course of conduct by which someone intends to deceive or cheat, in

5   other words to deprive the victim of money or property by means of

6   deception.  It is not necessary for the government to prove that a

7   financial institution was the only or sole victim of the scheme to

8   defraud.  It is also not necessary for the government to prove that

9   the individual was actually successful in defrauding any financial

10  institution.  Finally, it is not necessary for the government to

11  prove that any financial institution lost any money or property as a

12  result of the scheme to defraud.

13       An "intent to defraud" means to act willfully and with the

14  specific intent to deceive and cheat.

15                       PENALTIES AND RESTITUTION

16       8.    Defendant understands that the statutory maximum sentence

17  that the Court can impose for a violation of Title 18, United States

18  Code, Section 1956, is: 20 years' imprisonment; a 5-year period of

19  supervised release; a fine of $500,000 or twice the gross gain or

20  gross loss resulting from the offense, whichever is greatest; and a

21  mandatory special assessment of $100.

22       9.    Defendant understands that defendant will be required to

23  pay full restitution to the victims of the offenses to which

24  defendant is pleading guilty.  Defendant agrees that, in return for

25  the USAO's compliance with its obligations under this agreement, the

26  Court may order restitution to persons other than the victims of the

27  offenses to which defendant is pleading guilty and in amounts greater

28  than those alleged in the count to which defendant is pleading

                                     6

1   guilty.   In particular, defendant agrees that the Court may order
2   restitution to any victim of any of the following for any losses
3   suffered by that victim as a result: (a) any relevant conduct, as
4   defined in U.S.S.G. § 1B1.3, in connection with the offense to which
5   defendant is pleading guilty; and (b) any counts dismissed pursuant
6   to this agreement as well as all relevant conduct, as defined in
7   U.S.S.G. § 1B1.3, in connection with those counts.   The parties
8   currently believe that the applicable amount of restitution is
9   approximately $16,900, but recognize and agree that this amount could
10  change based on facts that come to the attention of the parties prior
11  to sentencing.

12      10.   Defendant understands that supervised release is a period
13  of time following imprisonment during which defendant will be subject
14  to various restrictions and requirements.   Defendant understands that
15  if defendant violates one or more of the conditions of any supervised
16  release imposed, defendant may be returned to prison for all or part
17  of the term of supervised release authorized by statute for the
18  offense that resulted in the term of supervised release, which could
19  result in defendant serving a total term of imprisonment greater than
20  the statutory maximum stated above.

21      11.   Defendant understands that, by pleading guilty, defendant
22  may be giving up valuable government benefits and valuable civic
23  rights, such as the right to vote, the right to possess a firearm,
24  the right to hold office, and the right to serve on a jury.
25  Defendant understands that she is pleading guilty to a felony and
26  that it is a federal crime for a convicted felon to possess a firearm
27  or ammunition.   Defendant understands that the conviction in this
28  case may also subject defendant to various other collateral

consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

12. Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

13. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 below but is

8

1  not meant to be a complete recitation of all facts relevant to the

2  underlying criminal conduct or all facts known to either party that

3  relate to that conduct.

4       a.   Beginning no later than October 14, 2020, and

5  continuing through at least August 18, 2023, in Los Angeles County

6  and Orange County, within the Central District of California, and

7  elsewhere, defendant conspired and agreed with co-defendants CARLOS

8  CORONA, JOSE LUIS EDEZA JR., JOHN WESLEY BESS JR., RICARDO OCHOA JR.,

9  SAULO SOLARES, CARLOS LUIZ ARELLANO, SOFIA GENESIS ALVAREZ, KAREN

10  VANESSA MARTINEZ, and RICARDO WILFREDO NICHOLSON (collectively, the

11  "CO-CONSPIRATORS"), to knowingly and intentionally commit bank fraud.

12  Specifically, defendant and the CO-CONSPIRATORS agreed to knowingly

13  execute a scheme to fraudulently obtain money owned by Bank of

14  America, N.A. ("BOA"), Citibank, N.A. ("Citi"), Wells Fargo, N.A.

15  ("WFB"), JP Morgan Chase Bank ("Chase"), U.S. Bancorp ("USB"),

16  Kinecta Federal Credit Union ("Kinecta"), Navy Federal Credit Union

17  ("NFCU"), and SchoolsFirst Federal Credit Union ("SchoolsFirst")

18  (collectively, the "Financial Institutions"), through materially

19  false and fraudulent pretenses, representations, and promises.

20  Defendant joined this conspiracy knowing of this object and intending

21  to help accomplish it.

22       b.   At all times during the conspiracy, BOA, Citi, WFB,

23  Chase, USB, Kinecta, NFCU, and SchoolsFirst were financial

24  institutions insured by the Federal Deposit Insurance Corporation

25  ("FDIC").

26       c.   In furtherance of the conspiracy, co-defendant SOLARES

27  and others stole checks from the U.S. mail, including from mailboxes

28  and post office mail collection boxes located outside of U.S. Post

1  Office locations.  Co-defendants CORONA, EDEZA, BESS, and OCHOA, and

2  other co-conspirators, would then take possession of the checks that

3  co-defendant SOLARES and others stole.

4          d.   In furtherance of the conspiracy, defendant and co-

5  defendants CORONA, EDEZA, BESS, OCHOA, ARELLANO, ALVAREZ, MARTINEZ,

6  and NICHOLSON, and other co-conspirators, solicited bank account

7  holders through social media to provide their debit cards and bank

8  account information to defendant and her co-conspirators.  In return,

9  defendant and her co-conspirators promised these account holders a

10  cut of any fraudulent funds deposited into their accounts.  To

11  circumvent the fraud protections of the Financial Institutions,

12  defendant and her co-conspirators specifically requested bank

13  accounts that had been open for a certain amount of time so that co-

14  conspirators could get access to the stolen funds more quickly.  Once

15  bank account holders responded to the advertisements via social media

16  and provided the information requested in the advertisements,

17  including bank account numbers, PIN numbers, and online banking log-

18  in information, defendant and co-defendants CORONA, EDEZA, BESS,

19  OCHOA, ARELLANO, ALVAREZ, MARTINEZ, and NICHOLSON also took physical

20  possession of the account holders' debit cards.  Defendant and her

21  co-conspirators then exchanged the debit cards and bank account

22  information obtained from the bank account holders with each other.

23          e.   In furtherance of the conspiracy, co-defendants

24  CORONA, EDEZA, BESS, and OCHOA, and other co-conspirators, deposited

25  the stolen checks into the bank accounts that had been sourced by

26  defendant and other co-conspirators.  In most cases, the stolen

27  checks were falsely endorsed in the original payee's name.  In doing

28  so, the co-conspirators falsely represented that they were the payees

on the checks and were entitled to the funds and concealed that they were not the payees on the stolen checks and that they were not authorized to deposit the checks or receive the payees' funds. In some cases, the checks were washed or altered to make the payee the name of the owner of the bank account into which the checks were being deposited.

f.    In furtherance of the conspiracy, after the stolen checks were deposited into the bank accounts described above, co-defendants CORONA, EDEZA, BESS, and OCHOA, and other co-conspirators, rapidly depleted the fraudulently deposited funds from the account holders' accounts by making cash withdrawals, electronic transfers, and/or debit card purchases.

g.    Throughout the course of the conspiracy, to conceal the fraud, defendant and her co-conspirators instructed account holders to claim that their accounts had been compromised if contacted by the Financial Institutions about the fraudulent deposits.

h.    Also in furtherance of the conspiracy, defendant and her co-conspirators committed at least the following acts:

i.    On May 25, 2022, defendant posted an Instagram story asking followers to direct message her if they had bank accounts with WFB, Citi, BOA, Union Bank, or Chase and stating that she would give followers a cut if they found someone who had one of the requested accounts.

ii.   On July 17, 2023, defendant posted an Instagram story stating that she was "picking up accounts later" and inviting followers to direct message her if they had a bank account with BOA, WFB, or Chase that was one year or older.

1  **Accountholder J.O. (WFB Account 9844)**

2  iii. On or before June 9, 2021, defendant solicited

3  the account holder of WFB Account 9844 through Instagram and asked

4  the account holder to provide the debit card and bank account

5  information for WFB Account 9844.

6  iv.  On or before June 9, 2021, defendant caused WFB

7  Card 7536 to be delivered to co-defendant CORONA.

8  v.  On June 23, 2021, in response to defendant's

9  Instagram direct message asking if WFB Account 9844 "still work[ed],"

10  co-defendant CORONA said he was going to try to deposit a stolen

11  check into the account that day.

12  vi.  On June 23, 2021, co-defendant CORONA deposited

13  check no. 4774 from S.L.C., which had been altered to be made payable

14  to J.O., in the amount of $6,900 into WFB Account 9844 using WFB Card

15  7536 at an ATM in Downey, California.

16  vii. On June 24, 2021, defendant sent an Instagram

17  direct message to co-defendant CORONA stating that the deposit had

18  cleared.

19  viii.   On June 24, 2021, co-defendant CORONA

20  withdrew $2,500 in cash from WFB Account 9844 at an ATM in Los

21  Angeles, California.

22  ix.  On June 24, 2021, in response to defendant's

23  Instagram direct message asking about the payout split from the check

24  deposit, co-defendant CORONA directed defendant to give $2,000 to

25  J.O. and said defendant would receive $2,300.

26  i.  Defendant admits that by engaging in the conduct and

27  acts described above: (1) she knowingly executed and participated in

28  a scheme to defraud the Financial Institutions of money; and (2) she

did so with the intent to defraud the Financial Institutions. Defendant also admits that by engaging in the conduct and acts described above, her co-conspirators unlawfully obtained money from the Financial Institutions through false and fraudulent pretenses, statements, and representations, which had the natural tendency to influence the Financial Institutions to part with money.

j. Defendant admits that over the course of the conspiracy, she: (1) attempted and intended to cause a loss of at least $1,214,080.53 to several of the Financial Institutions; and (2) caused an actual loss of $16,900 to Wells Fargo.

k. Lastly, defendant admits that on June 24, 2021, in Los Angeles County, defendant and co-defendant CORONA, each aiding and abetting the other: (1) conducted a financial transaction affecting interstate and foreign commerce; (2) knowing that the property involved in the financial transaction represented the proceeds of bank fraud, in violation of Title 18, United States Code, Section 1344; and (3) knowing that the transaction was designed to conceal and disguise the nature, location, source, and ownership of such proceeds.

i. Specifically, on June 23, 2021, co-defendant CORONA committed bank fraud by depositing check no. 4774 from S.L.C., which was stolen and had been altered to be made payable to J.O., in the amount of $6,900 into WFB Account 9844 using WFB Card 7536 at an ATM in Downey, California. On June 24, 2021, co-defendant CORONA withdrew $2,500 in cash from WFB Account 9844 at an ATM in Los Angeles, knowing that this cash represented the proceeds of bank fraud and that the withdrawal was designed to conceal and disguise the nature, location, source, and ownership of the proceeds.

ii.   Prior to co-defendant CORONA depositing check no. 4774 into WFB Account 9844 and withdrawing $2,500 in cash from WFB Account 9844, defendant solicited the actual account holder of WFB Account 9844 (the "Account Holder") through Instagram and asked the Account Holder to provide the debit card and bank account information for WFB Account 9844.   Once the Account Holder provided defendant with the debit card and bank account information, defendant provided the debit card and bank account information to co-defendant CORONA so that co-defendant CORONA could deposit stolen checks, like check no. 4774, into WFB Account 9844 and make unlawful cash withdrawals, like the above-described $2,500 withdrawal on June 24, 2021.

iii. Defendant admits that by engaging in the conduct described above: (1) co-defendant Corona committed the crime of Laundering of Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); (2) defendant aided co-defendant CORONA with respect to at least one element of the Laundering of Monetary Instruments; (3) defendant acted with the intent to facilitate co-defendant CORONA's Laundering of Monetary Instruments; and (3) defendant acted before the crime was complete.

<u>SENTENCING FACTORS</u>

14.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).   Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the

Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

15.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:

| | | |
|---|---|---|
| | 7 | U.S.S.G. §§ 2S1.1(a)(1), 2B1.1(a)(1) |
| More than $550,000 of Loss: | +14 | U.S.S.G. § 2B1.1(b)(1)(H) |
| Specific Offense Characteristics: | | |
| Conviction Under 18 U.S.C. § 1956: | +2 | U.S.S.G. § 2S1.1(b)(2)(B) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

16.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

18.   Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.   The right to persist in a plea of not guilty.

      b.   The right to a speedy and public trial by jury.

1         c.   The right to be represented by counsel -- and if

2 necessary have the Court appoint counsel -- at trial. Defendant

3 understands, however, that, defendant retains the right to be

4 represented by counsel -- and if necessary have the Court appoint

5 counsel -- at every other stage of the proceeding.

6         d.   The right to be presumed innocent and to have the

7 burden of proof placed on the government to prove defendant guilty

8 beyond a reasonable doubt.

9         e.   The right to confront and cross-examine witnesses

10 against defendant.

11         f.   The right to testify and to present evidence in

12 opposition to the charges, including the right to compel the

13 attendance of witnesses to testify.

14         g.   The right not to be compelled to testify, and, if

15 defendant chose not to testify or present evidence, to have that

16 choice not be used against defendant.

17         h.   Any and all rights to pursue any affirmative defenses,

18 Fourth Amendment or Fifth Amendment claims, and other pretrial

19 motions that have been filed or could be filed.

20 <u>WAIVER OF APPEAL OF CONVICTION</u>

21    19.   Defendant understands that, with the exception of an appeal

22 based on a claim that defendant's guilty plea was involuntary, by

23 pleading guilty defendant is waiving and giving up any right to

24 appeal defendant's conviction on the offense to which defendant is

25 pleading guilty. Defendant understands that this waiver includes,

26 but is not limited to, arguments that the statute to which defendant

27 is pleading guilty is unconstitutional, and any and all claims that

28

1    the statement of facts provided herein is insufficient to support

2    defendant's plea of guilty.

3                LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

4        20.   Defendant agrees that, provided the Court imposes a term of

5    imprisonment within or below the range corresponding to an offense

6    level of 20 and the criminal history category calculated by the

7    Court, defendant gives up the right to appeal all of the following:

8    (a) the procedures and calculations used to determine and impose any

9    portion of the sentence; (b) the term of imprisonment imposed by the

10   Court; (c) the fine imposed by the Court, provided it is within the

11   statutory maximum; (d) to the extent permitted by law, the

12   constitutionality or legality of defendant's sentence, provided it is

13   within the statutory maximum; (e) the amount and terms of any

14   restitution order, provided it requires payment of no more than

15   $16,900; (f) the term of probation or supervised release imposed by

16   the Court, provided it is within the statutory maximum; and (g) any

17   of the following conditions of probation or supervised release

18   imposed by the Court: the conditions set forth in Second Amended

19   General Order 20-04 of this Court; the drug testing conditions

20   mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and

21   drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

22       21.   The USAO agrees that, provided (a) all portions of the

23   sentence are at or below the statutory maximum specified above and

24   (b) the Court imposes a term of imprisonment within or above the

25   range corresponding to an offense level of 20 and the criminal

26   history category calculated by the Court.  The USAO gives up its

27   right to appeal any portion of the sentence, with the exception that

28

1  the USAO reserves the right to appeal the following: (a) the amount

2  of restitution ordered if that amount is less than $16,900.

3  <u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

4  22.  Defendant agrees that if, after entering a guilty plea

5  pursuant to this agreement, defendant seeks to withdraw and succeeds

6  in withdrawing defendant's guilty plea on any basis other than a

7  claim and finding that entry into this plea agreement was

8  involuntary, then (a) the USAO will be relieved of all of its

9  obligations under this agreement; and (b) should the USAO choose to

10  pursue any charge that was either dismissed or not filed as a result

11  of this agreement, then (i) any applicable statute of limitations

12  will be tolled between the date of defendant's signing of this

13  agreement and the filing commencing any such action; and

14  (ii) defendant waives and gives up all defenses based on the statute

15  of limitations, any claim of pre-indictment delay, or any speedy

16  trial claim with respect to any such action, except to the extent

17  that such defenses existed as of the date of defendant's signing this

18  agreement.

19  <u>RESULT OF VACATUR, REVERSAL, OR SET-ASIDE</u>

20  23.  Defendant agrees that if the count of conviction is

21  vacated, reversed, or set aside, both the USAO and defendant will be

22  released from all their obligations under this agreement.

23  <u>EFFECTIVE DATE OF AGREEMENT</u>

24  24.  This agreement is effective upon signature and execution of

25  all required certifications by defendant, defendant's counsel, and an

26  Assistant United States Attorney.

27

28

## BREACH OF AGREEMENT

25.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

26.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

27.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

28.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 14 are consistent with the facts of this case.  While this paragraph permits

20

1  both the USAO and defendant to submit full and complete factual
2  information to the United States Probation and Pretrial Services
3  Office and the Court, even if that factual information may be viewed
4  as inconsistent with the facts agreed to in this agreement, this
5  paragraph does not affect defendant's and the USAO's obligations not
6  to contest the facts agreed to in this agreement.
7      29.  Defendant understands that even if the Court ignores any
8  sentencing recommendation, finds facts or reaches conclusions
9  different from those agreed to, and/or imposes any sentence up to the
10 maximum established by statute, defendant cannot, for that reason,
11 withdraw defendant's guilty plea, and defendant will remain bound to
12 fulfill all defendant's obligations under this agreement.  Defendant
13 understands that no one -- not the prosecutor, defendant's attorney,
14 or the Court -- can make a binding prediction or promise regarding
15 the sentence defendant will receive, except that it will be within
16 the statutory maximum.

NO ADDITIONAL AGREEMENTS

18     30.  Defendant understands that, except as set forth herein,
19 there are no promises, understandings, or agreements between the USAO
20 and defendant or defendant's attorney, and that no additional
21 promise, understanding, or agreement may be entered into unless in a
22 writing signed by all parties or on the record in court.
23 ///
24 ///
25 ///

1       PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2       31.  The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
  FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 E. MARTIN ESTRADA
  United States Attorney

9

10 *Sarah E. Spielberger*               May 3, 2024
   SARAH E. SPIELBERGER              Date
11 Assistant United States Attorney

12 VANESSA CORTES ARZATE           5/6/2024
  Defendant                      Date
13

14 NAREG GOURJIAN                5/6/24
  Attorney for Defendant VANESSA    Date
15 CORTES ARZATE

16 ///

17 ///

18 ///

19

20

21

22

23

24

25

26

27

28

1

<u>CERTIFICATION OF DEFENDANT</u>

2      I have read this agreement in its entirety.  I have had enough

3 time to review and consider this agreement, and I have carefully and

4 thoroughly discussed every part of it with my attorney.  I understand

5 the terms of this agreement, and I voluntarily agree to those terms.

6 I have discussed the evidence with my attorney, and my attorney has

7 advised me of my rights, of possible pretrial motions that might be

8 filed, of possible defenses that might be asserted either prior to or

9 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10 of relevant Sentencing Guidelines provisions, and of the consequences

11 of entering into this agreement.  No promises, inducements, or

12 representations of any kind have been made to me other than those

13 contained in this agreement.  No one has threatened or forced me in

14 any way to enter into this agreement.  I am satisfied with the

15 representation of my attorney in this matter, and I am pleading

16 guilty because I am guilty of the charge and wish to take advantage

17 of the promises set forth in this agreement, and not for any other

18 reason.

19

20 _____        _____
   VANESSA CORTES ARZATE                Date
21 Defendant

22 ///

23 ///

24 ///

25

26

27

28

                              23

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am VANESSA CORTES ARZATE's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____     _5/6/24_____
NAREG GOURJIAN                       Date
Attorney for Defendant VANESSA
CORTES ARZATE